**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **DACIA GONZALEZ and EVA VELAZQUEZ,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **BRINKER INTERNATIONAL PAYROLL** | ) |
| **COMPANY, L.P.,** | ) |
| | ) |
| **Defendant.** | ) |

```
FILED: MAY 14, 2008
08CV2781 J. N.
JUDGE KENNELLY
MAG. JUDGE COLE
```

## COMPLAINT

NOW COME Plaintiffs DACIA GONZALEZ and EVA VELAZQUEZ, complaining against the Defendant, BRINKER INTERNATIONAL PAYROLL COMPANY, L.P., and in so doing state as follows:

## NATURE OF THE CASE

1.      In this six-count complaint, Plaintiffs DACIA GONZALEZ (hereinafter "GONZALEZ") and EVA VELAZQUEZ (hereinafter "VELAZQUEZ") seek redress for creation of a hostile work environment, sexual harassment, retaliation and constructive discharge by Defendant BRINKER INTERNATIONAL PAYROLL COMPANY, L.P., (hereinafter "BRINKER"). The jurisdiction of this Court is invoked to secure protection of and to address deprivation of rights secured by 42 U.S.C. §2000(e)-2 and 42 U.S.C. §1981, providing for declaratory, injunctive, compensatory, punitive and other relief against sexual harassment and employment discrimination based upon the Plaintiffs' gender.   Defendant's actions represent a systematic policy and practice of sexual harassment against the Plaintiffs and constitute a continuing violation.

## PROCEDURAL REQUIREMENTS

2.      Plaintiffs have fulfilled all conditions precedent to the initiation of this action under Title VII, as amended by the Civil Rights Act of 1991.

3.     Each plaintiff has filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission alleging violations of Title VII.  Both charges were filed on April 2, 2007.  (See the two April 2, 2007, Charges of Discrimination attached hereto as Plaintiff Exhibit "A").

4.     The EEOC issued a "Notice of Right To Sue (Issued on Request)" to each Plaintiff dated February 15, 2008.  (See February 15, 2008 Notice of Right To Sue letters issued to both Plaintiffs, attached hereto as Plaintiff Exhibit "B").

5.     Plaintiffs have timely filed this lawsuit within ninety (90) days from the date of the February 15, 2008, Notices of Right To Sue.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981, as amended, and 28 U.S.C. §1331 and §1343.

7.     Venue is proper in this judicial district under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## PARTIES

8.     Plaintiff GONZALEZ is a female that resides in Streamwood, Illinois, within the Northern District of Illinois.

9.     Plaintiff VELAZQUEZ is a female that resides in Streamwood, Illinois, within the Northern District of Illinois.

10.     Defendant BRINKER is a Delaware corporation doing business in Illinois.

11.     Defendant BRINKER is engaged in an industry affecting commerce and employed more than 15 employees on each working day in each of twenty or more calendar weeks in the current and preceding calendar years, and is an employer within the meaning of Sections 701(b) and (h) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq*.

## FACTUAL ALLEGATIONS

12.      Plaintiff GONZALEZ began work for Defendant BRINKER in May of 2006.   In August of 2006 she was moved from her original duties to the Salad Department, which was located in an area called the Pantry; the Pantry was located in the kitchen.  At all times relevant hereto Plaintiff GONZALEZ performed her work duties in a satisfactory manner.

13.      Plaintiff VELAZQUEZ began work for Defendant BRINKER in March of 2006, where she worked in the Pantry preparing salads.  At all times relevant hereto Plaintiff VELAZQUEZ performed her work duties in a satisfactory manner.

14.      Both Plaintiffs worked the second shift, and were the only two woman employees who worked in the kitchen.

15.      The second shift kitchen staff consisted of twenty (20) employees, including two male Sous Chefs, and four male Coordinators who acted as working supervisors.

16.      Beginning on or about August of 2006, GONZALEZ and VELAZQUEZ were subjected to sexual harassment on the part of the four Coordinators, allowed, enabled and furthered by the two Sous Chefs, which continued for a period of approximately eight months through the eventual constructive termination of their employment with BRINKER.

17.      The two Plaintiffs were exposed to, and were the objects of, a constant barrage of sexually explicit commentary (in the Spanish language), gestures, and touchings, during which they were regularly referred to as the Spanish equivalent of "bitches", "whores", and other offensive epithets which they felt were designed to offend their sexuality, including but not limited to the following:

a)      Sous Chef Ismael Sanchez, on repeated occasions, and speaking pointedly to the Plaintiffs, bragged in sexually explicit language about his sexual exploits with various women, claiming that he had many lovers.

b)      Sanchez made a practice of fondling the waitresses that passed in and out

3

of the kitchen and bragging to Plaintiffs as to what parts of their bodies he had just touched, such as, "I just touched her breasts" and "I just touched her ass."

c)      Sous Chef Arturo Alvarado bragged frequently to the Plaintiffs about his sexual relationship with his wife, which commentary was understood by both Plaintiffs to be meant to offend them as women.

d)      Alvarado, as the senior kitchen staff employee, refused to acknowledge the harassment aimed at the Plaintiffs, and throughout the course of the harassment, acted to further it and to hide if from his superiors, thus attempting to shield himself and the other harassers from exposure.

e)      Coordinator Gumersindo Guadarrama, during the approximately eight-month period of harassment of the Plaintiffs, engaged daily in explicit commentary to the Plaintiffs emphasizing the superior qualities of his penis, and speculating on the similar qualities of those around him.  Such conversation was produced in front of, and for the benefit of, the two Plaintiffs, and was perceived by them as designed to intimidate and molest them.

f)      Guadarrama also on repeated occasions, engaged in symbolic anal sex with the busboys while staring pointedly at GONZALEZ and VELAZQUEZ.

g)      On one occasion, knowing that GONZALEZ was engaged to be married, Guadarrama asked her to go drinking with him at a bar.  GONZALEZ understood the invitation as an invitation to have sex, and refused.  Guadarrama then began a campaign to ignore GONZALEZ, including her work-related questions, causing a slow-down in her work and a lessening of production in her area, for which she received criticism from Sous Chef Alvarado.

h)      Coordinator Lucio Mondragon made frequent references, directed at

Plaintiffs, to having sexual relations with many women. While staring at GONZALEZ and VELAZQUEZ Mondragon would make comments about the attractiveness of large-breasted women. On one occasion while checking on the cleanliness of the Pantry, Mondragon donned plastic gloves in an imitation of a gynecological examination. Both Plaintiffs felt that the charade was meant to humiliate and ridicule them sexually. Mr. Mondragon stated in the presence of the Plaintiffs that "all the women slept with the Coordinators…" This statement was understood by both Plaintiffs as a message that they should comply accordingly.

i)     Coordinator Javier Franco engaged in constant verbal abuse of the women workers, making references to their sexuality and calling them "whores" to their faces, including in the presence of Chef Ryan Neech.

j)     Coordinator Augustin Villanueva engaged in a series of incidents in which he illicitly and without invitation, touched the body of Plaintiff GONZALEZ, encircled the waist of GONZALEZ with his arms. GONZALEZ objected, saying "Don't touch me." On two or more occasions, Villanueva forcibly immobilized GONZALEZ, forcing her to face him, while making verbal advances and suggesting that GONZALEZ engage in sexual activity with him.

18.     Both GONZALEZ and VELAZQUEZ understood the harassment as directed against their sexuality, and an attempt to humiliate, denigrate and to establish control over them.

19.     Both Plaintiffs describe the harassment as constant, pointed, humiliating, debilitating and degrading, and that the example set by the Coordinators and Sous Chefs enlivened and encouraged the hostility of other workers, leading to additional incidents of harassment from other workers, creating a hostile work environment for the Plaintiffs.

20.     On or about September 15, 2006, GONZALEZ and VELAZQUEZ, in an effort to stop the harassment, complained to Chef Ryan Neech, who had the authority to hire, fire, discipline and demote, regarding the pervasive atmosphere of sexual

harassment pervading the kitchen area during the second shift.  Although Sous Chef Alvarado was used as translator, both Plaintiffs agree that Chef Neech  was provided an accurate translation of the nature and scope of the offending behavior.

21.     During the September 15th meeting between Chef Neech, GONZALEZ and VELAZQUEZ, the Plaintiffs complained to him in explicit terms regarding the sexual harassment that they were exposed to in the second shift kitchen, and stated that the harassment caused a hostile work atmosphere and was negatively effecting their ability to perform their work functions.

22.     On or about the next day, Neech responded to Plaintiffs' complaints by meeting with the Coordinators.

23.     Immediately following said meeting and on a continuing basis, the Plaintiffs were met with hostility from the recipients of Neech's comments, worsening the Plaintiffs' work environment.  There was no follow-up by Neech.

24.      Acts of revenge were perpetrated upon the two Plaintiffs including the frequent and continuing assignment of extra work not a part of their work responsibilities. Similarly, over a period of time, the Coordinators reduced the Pantry staff from 3 workers to only GONZALEZ, who on the busiest weekend nights was forced to cover the area by herself.  This led to a slow-down in production and drew complaints from the wait staff, regarding which Sous Chef Alvarado criticized her productivity.

25.     On or about September 17, 2006, while attempting to write down the phone number of the Equal Employment Opportunity Commission, VELAZQUEZ discovered that all of the advisory posters (Wage & Hour, Discrimination, Worker's Comp and OSHA) previously posted in the hallway outside the Main Office had been removed.  Said posters did not reappear during the tenure of either Plaintiff.  The posters were in such a location that Management, that is, both Neech and General Manager, Aeron Lancero, knew or should have known of their absence.

26.     On or about January 14, 2007, in a second attempt to obtain relief from the hostile work environment created by their harassing supervisors, GONZALEZ and VELAZQUEZ complained to the restaurant's General Manager and Neech's boss, Aeron Lancero, who had authority to hire, fire, discipline and demote, detailing the harassment of the four Coordinators and the two Sous Chefs, stating also that they had complained to

Chef Ryan Neech, but that nothing had changed as to their constant harassment, but had only become worse.  Lancero took notes.

27.    Lancero, who does not speak Spanish, used an employee from the Carry-Out Department, uninvolved and disinterested, to translate at this meeting, and was able to gain a clear understanding of the Plaintiffs' complaints.

28.    On or about January 19, 2007, Lancero called a meeting to deal with the reported problems of harassment.

29.    Present at the meeting of January 19th was General Manager Lancero, Chef Ryan Neech, Sous Chef Ismael Sanchez (who, though an interested party, was asked to serve as translator), Plaintiff GONZALEZ, and an office worker, Ana, who was included so that the Plaintiff "would not feel alone".   It was Plaintiff VELAZQUEZ' day off; Lancero stated he would take the matter up with her when she returned, but didn't.

30.    At the meeting Lancero stated that the Coordinators blamed GONZALEZ for the discord at the restaurant; she was accused of always being angry and of having a bad attitude.

31.    Chef Neech presented Defendant's resolution to the problem: GONZALEZ was transferred to the Banquet Department of the restaurant, located on the second floor of the building.  GONZALEZ objected to this action as misdirected, but without avail.  No written statement was offered to GONZALEZ and nothing was signed. Said transfer was retaliatory in nature, directed against the victim of the harassment rather than the harassers, and represented a material change in the terms and conditions of Plaintiff's employment.  In effect, it was a punishment.

32.    Despite the transfer to Banquets, the harassment continued unabated as GONZALEZ' new job duties took her through the kitchen on a frequent basis where she continued to be ridiculed and exposed to sexual insult in the same manner as before.

33.    In a final insult, Sous Chef Arturo Alvarado promulgated an order that GONZALEZ was no longer allowed to speak to anyone during work hours, and that the other workers should watch her to make sure there were no infractions of the rule.  The prohibition extended to her boyfriend, Felix, who also worked at the restaurant, and carried the threat of termination if disobeyed.

34.    The same order was imposed in relation to VELAZQUEZ.

35.    Although the Plaintiffs perceived the order as an unfair attempt to suppress any expression of the continuing problem of sexual harassment at the restaurant, both Plaintiffs took the order seriously on pain of losing their jobs.

36.    On or about March 21, 2007, upon her arrival at work GONZALEZ was confronted by Rosalva, a worker who she believed had spoken falsely of her to the Coordinators.  Rosalva began to yell, denying that she had gossiped to the Coordinators and Sous Chefs about GONZALEZ; GONZALEZ became agitated, at which time Chef Neech intervened.

37.    Both were escorted to Chef Neech's office; Rosalva was soon returned to her work duties, but GONZALEZ was told to stay.  Although the Meeting of January 19th had produced no formal disciplinary action, Neech stated to GONZALEZ that she "had been warned," and that next time there was a problem Neech would suspend her.

38.    When GONZALEZ objected that Rosalva was not being treated equally for the same infraction, Neech responded that Rosalva had not complained against the Coordinators.  GONZALEZ stated that she felt that she was the victim of discrimination, whereupon Neech stated that he was tired of her problem and her constant troublemaking, and that she was therefore suspended for one week for complaining against and mistreating the Coordinators.   Plaintiff GONZALEZ' suspension was an act of retaliation.

39.    Neech then reduced GONZALEZ' work load from four to three days per week, though there had been no slow-down of business at the restaurant and no other reductions of hours in relation to any other employees.    The reduction of Plaintiff GONZALEZ' work load was an act of retaliation.

40.    GONZALEZ was suspended from March 21, 2007, to March 28, 2007.

41.    Upon her return, GONZALEZ' schedule was modified to return her to the Pantry where she was again exposed to the sexual attentions of the Coordinators and Sous Chefs.  Neech warned GONZALEZ not to talk to anyone about the "problem" on pain of dismissal.

42.    During GONZALEZ' suspension, VELAZQUEZ experienced the same harassment as before, but with an abandon fostered by the belief that, with GONZALEZ out of the way, there would be no more challenges to their conduct.

43.    GONZALEZ returned to work after her term of suspension to find that the environment of harassment had developed to one of outright anger and hostility, as the group of harassers reacted to her return.   Whereas formerly she had felt harried and desperate as a result of the predominately verbal attacks, upon her return she felt physically threatened as well.

44.    The extreme hostility shown GONZALEZ by all of her six supervisors, as well as the unsympathetic attitude of management, forced GONZALEZ to leave her job at the restaurant, feeling that she was not safe and could no longer work there.   Her departure constitutes a constructive termination.

45.    Since the beginning of the harassment GONZALEZ experienced feelings of anger, guilt, helplessness and depression.   She had trouble sleeping, suffered a decline in her sexual drive (causing tension and a loss of intimacy with her fiancé), lost her enjoyment of the work, experienced feelings of dread, and believed she needed psychological counseling.

46.    On or about April 2, 2007, both Plaintiffs variously filed charges of sexual harassment and retaliation against Defendant BRINKER with the EEOC.   On or about July 19, 2007, both Plaintiffs updated their complaints to include charges of constructive discharge.

47.    On or about April 7, 2007, VELAZQUEZ was called to a meeting with General Manager Lancero, Chef Neech, Ana and a translator.   Lancero stated that he wanted VELAZQUEZ to withdraw her complaint from the EEOC, that if she did her working conditions would be improved, but that if she didn't, the restaurant would take legal action against her, personally.

48.    Threatened with legal retaliation in response to the pursuit of her civil rights under the law, and left alone in the kitchen with the group of angry harassers without her former ally, VELAZQUEZ felt isolated, abused and desperate.

49.    She feared physical violence from those around her.

50.    Having worked for the last eight months under conditions producing feelings of helplessness, depression, anger, nervousness, a lack of enjoyment of life, feelings of dread, feelings of guilt, a reduced sex life with her husband, and since the departure of her only ally, GONZALEZ, fear of physical violence, and additionally,

being effectively ostracized and unable to bear the thought of continuing to work in such a damaging environment so destructive to her person and to her work, and absolutely certain that no relief could be obtained through complaints to management, VELAZQUEZ left her employ at the restaurant on or about April 19, 2007. Her departure constitutes a constructive termination.

## COUNT I
### (Title VII, Sexual Harassment - Gonzalez)

62.    Plaintiffs incorporate and reallege Paragraphs 1 through 61 of this Complaint as Paragraphs 1 through 61 of this Count I, as though fully set forth herein.

63.    At all times relevant to this cause of action, Plaintiff GONZALEZ was a "person" and "employee" of Defendant, and Defendant was her "employer" covered by and within the meaning of Title VII.

64.    At all time relevant to this cause of action, Aeron Lancero, Ryan Neech, Alvaro Alvarado, Ismael Sanchez, Gumersindo Guadarrama, Lucio Mondragon, Javier Franco and Augustin Villanueva, and other personnel and supervisory employees were all agents of Defendant covered by and within the meaning of Title VII.

65.    The actions of Defendant as perpetrated by its agents and as described and complained of above, are unlawful employment practices in that they likely have the effect of discriminating against, depriving, tending to deprive, and otherwise adversely affecting Plaintiff GONZALEZ, with regard to equal employment because of her sex, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000(e), *et seq.*;

66.    At all times relevant to this cause of action, Defendant BRINKER had a duty under Title VII to refrain from discriminating against Plaintiff GONZALEZ based on her gender and engaging in sexual harassment. Defendant had a duty under Title VII, after receiving notice of same, to prevent the ongoing sexually hostile work environment.

67.    Plaintiff GONZALEZ reported the sexual harassment and hostile work environment on numerous occasions to management and supervisory employees of Defendants, including Ryan Neech and Aeron Lancero.

68.    Despite knowledge of the severe and pervasive hostile work environment,

Defendant BRINKER failed and refused to take any action to investigate, remediate, stop, prevent, or otherwise address the ongoing discrimination and harassment.

69.    Defendant intentionally subjected Plaintiff GONZALEZ to unequal and discriminatory treatment by allowing the creation and perpetuation of a hostile and abusive work environment that altered the conditions of Plaintiff's employment and by knowingly failing and refusing to protect Plaintiff form those hostile and abusive conditions.

70.    The discriminatory actions by Defendant BRINKER, through their management, agents and employees, were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws, state laws, and the rights and sensibilities of Plaintiff GONZALEZ.

71.    Defendant BRINKER, by and through its agents, engaged in the foregoing acts and conduct when it know or should have known that the same were in violation of Title VII and any alleged reasons to the contrary are pretextual.

72.    The actions of Defendant BRINKER in intentionally engaging in and condoning sexual harassment against Plaintiff GONZALEZ has caused her great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE,** Plaintiff GONZALEZ respectfully requests:

a. All wages and benefits Plaintiff GONZALEZ would have received but for the discrimination, including pre-judgment interest;

b. Compensatory damages to the maximum amount permitted by statute to compensate Plaintiff GONZALEZ for the depression, humiliation, anguish, and emotional distress caused by Defendant BRINKER's conduct;

c. Defendant be required to pay prejudgment interest to Plaintiff GONZALEZ on these damages;

d. A permanent injunction enjoining Defendant BRINKER from engaging in the discriminatory practices complained of herein;

e. A permanent injunction requiring Defendant BRINKER adopt employment practices and policies in accord and conformity with the requirement of Title VII, 42 U.S.C. §2000(e), *et seq.*;

f. The Court retain jurisdiction of this case until such time as it is assured that Defendant have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

g. Punitive damages as a result of Defendant BRINKER's deliberate, intentional, willful, wanton and malicious conduct;

h. An award of reasonable attorneys' fees, costs, and litigation expenses; and,

i. Such other relief as the court may deem just or equitable.


## COUNT II
### (Title VII, Retaliation - Gonzalez)

73. Plaintiffs incorporate and reallege Paragraphs 1 through 72 of Count I as Paragraphs 1 through 72 of this Count II, as though fully set forth herein.

74. Defendant BRINKER had a duty to refrain from taking adverse employment action against Plaintiff GONZALEZ in response to her efforts to assert her legal rights under federal law, and specifically in relation to her complaints of discrimination and sexual harassment by agents and employees of the Defendant.

75. Defendant BRINKER failed in this duty inasmuch as, in response to complaints of sexual harassment from Plaintiff GONZALEZ, Defendant both suspended her and caused a reduction in her work hours by 25 per cent.

76. Defendant BRINKER did not take similar action against any similarly situated employee who did not complaint about sexual harassment.

77. Plaintiff GONZALEZ at all times performed her job duties in a satisfactory manner.

78. The discriminatory actions by Defendant BRINKER, through their management, agents and employees, were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws, state laws, and the rights and sensibilities of Plaintiff GONZALEZ.

79.    Defendant BRINKER, by and through its agents, engaged in the foregoing acts and conduct when it know or should have known that the same were in violation of Title VII and any alleged reasons to the contrary are pretextual.

80.    The actions of Defendant BRINKER in intentionally engaging in and condoning sexual harassment against Plaintiff GONZALEZ has caused her great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE,** Plaintiff GONZALEZ respectfully requests:

    a.    All wages and benefits Plaintiff GONZALEZ would have received but for the discrimination, including pre-judgment interest;

    b.    Compensatory damages to the maximum amount permitted by statute to compensate Plaintiff GONZALEZ for the depression, humiliation, anguish, and emotional distress caused by Defendant BRINKER's conduct;

    c.    Defendant be required to pay prejudgment interest to Plaintiff GONZALEZ on these damages;

    d.    A permanent injunction enjoining Defendant BRINKER from engaging in the discriminatory practices complained of herein;

    e.    A permanent injunction requiring Defendant BRINKER adopt employment practices and policies in accord and conformity with the requirement of Title VII, 42 U.S.C. §2000(e), *et seq.*;

    f.    The Court retain jurisdiction of this case until such time as it is assured that Defendant have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

    g.    Punitive damages as a result of Defendant BRINKER's deliberate, intentional, willful, wanton and malicious conduct;

    h.    An award of reasonable attorneys' fees, costs, and litigation expenses; and,

    i.    Such other relief as the court may deem just or equitable.

## COUNT III
### (Title VII, Constructive Discharge – Gonzalez)

81.     Plaintiffs incorporate and reallege Paragraphs 1 through 80 of Count II as Paragraphs 1 through 80 of this Count III, as though fully set forth herein.

82.     Plaintiff GONZALEZ has a federally protected right to work in a workplace that is free from sexual harassment, gender discrimination, and abuse.

83.     The hostile work environment, discrimination and harassment, as alleged herein, made Plaintiff GONZALEZ' working conditions so intolerable and unbearable that she was forced to resign her position.

84.     The demonstrated failure and refusal of the Defendant management to act in support of an environment free of abuse, and indeed the palpably hostile attitude toward Plaintiff manifested by Chef Neech, led Plaintiff GONZALEZ to realize that the intolerable conditions would persist without remediation.   Plaintiff was thus forced to resign her position when Defendant refused to take any action to protect Plaintiff or prevent the ongoing and continuous sexual harassment and gender discrimination to which she was exposed.

85.     A reasonable person subjected to Plaintiff's working conditions would have determined that the hostile work environment, discrimination and harassment, as alleged herein, were so unbearable and intolerable that he or she would be compelled to resign.

86.     The actions of Defendant in intentionally engaging in and condoning sexual harassment against Plaintiff GONZALEZ has caused her great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE,** Plaintiff GONZALEZ respectfully requests:

a.  All wages and benefits Plaintiff GONZALEZ would have received but for the discrimination, including pre-judgment interest;

b.  Compensatory damages to the maximum amount permitted by statute to compensate Plaintiff GONZALEZ for the depression, humiliation,

anguish, and emotional distress caused by Defendant BRINKER's conduct;

c. Defendant be required to pay prejudgment interest to Plaintiff GONZALEZ on these damages;

d. A permanent injunction enjoining Defendant BRINKER from engaging in the discriminatory practices complained of herein;

e. A permanent injunction requiring Defendant BRINKER adopt employment practices and policies in accord and conformity with the requirement of Title VII, 42 U.S.C. §2000(e), *et seq.*;

f. The Court retain jurisdiction of this case until such time as it is assured that Defendant have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

g. Punitive damages as a result of Defendant BRINKER's deliberate, intentional, willful, wanton and malicious conduct;

h. An award of reasonable attorneys' fees, costs, and litigation expenses; and,

i. Such other relief as the court may deem just or equitable.

## COUNT IV
### Title VII, Sexual Harassment – Velazquez)

87. Plaintiffs incorporate and reallege Paragraphs 1 through 86 of Count III as Paragraphs 1 through 86 of this Count IV, as though fully set forth herein.

88. At all times relevant to this cause of action, Plaintiff VELAZQUEZ was a "person" and "employee" of Defendant, and Defendant was her "employer" covered by and within the meaning of Title VII.

89. At all times relevant to this cause of action, Aeron Lancero, Ryan Neech, Alvaro Alvarado, Ismael Sanchez, Gumersindo Guadarrama, Lucio Mondragon, Javier Franco and Augustin Villanueva, and other personnel and supervisory employees were all agents of Defendant covered by and within the meaning of Title VII.

90. The actions of Defendant as perpetrated by its agents and as described and complained of above, are unlawful employment practices in that they likely have the

effect of discriminating against, depriving, tending to deprive, and otherwise adversely affecting Plaintiff VELAZQUEZ, with regard to equal employment because of her sex, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000(e), *et seq.*;

91.     At all times relevant to this cause of action, Defendant BRINKER had a duty under Title VII to refrain from discriminating against Plaintiff VELAZQUEZ based on her gender and engaging in sexual harassment.  Defendant had a duty under Title VII, after receiving notice of same, to prevent the ongoing sexually hostile work environment.

92.     Plaintiff VELAZQUEZ reported the sexual harassment and hostile work environment on numerous occasions to management and supervisory employees of Defendants, including Chef Ryan Neech and General Manager Aeron Lancero.

93.     Despite knowledge of the severe and pervasive hostile work environment, Defendant BRINKER failed and refused to take any action to investigate, remediate, stop, prevent, or otherwise address the ongoing discrimination and harassment.

94.     Defendant intentionally subjected Plaintiff VELAZQUEZ to unequal and discriminatory treatment by allowing the creation and perpetuation of a hostile and abusive work environment that altered the conditions of Plaintiff's employment and by knowingly failing and refusing to protect Plaintiff form those hostile and abusive conditions.

95.     The discriminatory actions by Defendant BRINKER, through their management, agents and employees, were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws, state laws, and the rights and sensibilities of Plaintiff VELAZQUEZ.

96.     Defendant BRINKER, by and through its agents, engaged in the foregoing acts and conduct when it knew or should have known that the same were in violation of Title VII and any alleged reasons to the contrary are pretextual.

97.     The actions of Defendant BRINKER in  intentionally  engaging  in  and condoning sexual harassment against Plaintiff VELAZQUEZ has caused her great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE,** Plaintiff VELAZQUEZ respectfully requests:

j.   All wages and benefits Plaintiff VELAZQUEZ would have received but for the discrimination, including pre-judgment interest;

k.   Compensatory damages to the maximum amount permitted by statute to compensate Plaintiff VELAZQUEZ for the depression, humiliation, anguish, and emotional distress caused by Defendant BRINKER's conduct;

l.   Defendant be required to pay prejudgment interest to Plaintiff VELAZQUEZ on these damages;

m.   A permanent injunction enjoining Defendant BRINKER from engaging in the discriminatory practices complained of herein;

n.   A permanent injunction requiring Defendant BRINKER adopt employment practices and policies in accord and conformity with the requirement of Title VII, 42 U.S.C. §2000(e), *et seq.*;

o.   The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein and is determined to be in full compliance with the law;

p.   Punitive damages as a result of Defendant BRINKER's deliberate, intentional, willful, wanton and malicious conduct;

q.   An award of reasonable attorneys' fees, costs, and litigation expenses; and,

r.   Such other relief as the court may deem just or equitable.


### <u>COUNT V</u>
**(Title VII, Retaliation – Velazquez)**

98.     Plaintiffs incorporate and reallege Paragraphs 1 through 97 of Count IV as Paragraphs 1 through 97 of this Count V, as though fully set forth herein.

99.     Defendant BRINKER had a duty to refrain from taking adverse employment action against Plaintiff VELAZQUEZ in response to her efforts to assert her legal rights under federal law, and specifically in relation to her complaints of sexual harassment by agents and employees of the Defendant.

100.    Defendant BRINKER failed in this duty inasmuch as, in response to the complaints of sexual harassment and discrimination from Plaintiff VELAZQUEZ, Defendant    BRINKER threatened to take legal action against her were she not to withdraw her EEOC charge of sexual harassment against the company, thus causing a materially adverse change in the terms and conditions of Plaintiff VELAZQUEZ' employment.

101.    Defendant BRINKER did not take similar action against any similarly situated employee who did not complaint about sexual harassment and discrimination.

102.    Plaintiff VELAZQUEZ at all times performed her job duties in a satisfactory manner.

103.    The discriminatory actions by Defendant BRINKER, through their management, agents and employees, were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws, state laws, and the rights and sensibilities of Plaintiff VELAZQUEZ.

104.    Defendant BRINKER, by and through its agents, engaged in the foregoing acts and conduct when it knew or should have known that the same were in violation of Title VII and any alleged reasons to the contrary are pretextual.

105.    The actions of Defendant BRINKER in  intentionally  engaging  in  and condoning sexual harassment against Plaintiff VELAZQUEZ has caused her great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE,** Plaintiff VELAZQUEZ respectfully requests:

    a.    All wages and benefits Plaintiff VELAZQUEZ would have received but for the discrimination, including pre-judgment interest;

    b.    Compensatory damages to the maximum amount permitted by statute to compensate Plaintiff VELAZQUEZ for the depression, humiliation, anguish, and emotional distress caused by Defendant BRINKER's conduct;

    c.    Defendant be required to pay prejudgment interest to Plaintiff VELAZQUEZ on these damages;

d. A permanent injunction enjoining Defendant BRINKER from engaging in the discriminatory practices complained of herein;

e. A permanent injunction requiring Defendant BRINKER adopt employment practices and policies in accord and conformity with the requirement of Title VII, 42 U.S.C. §2000(e), *et seq.*;

f. The Court retain jurisdiction of this case until such time as it is assured that Defendant have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

g. Punitive damages as a result of Defendant BRINKER's deliberate, intentional, willful, wanton and malicious conduct;

h. An award of reasonable attorneys' fees, costs, and litigation expenses; and,

i. Such other relief as the court may deem just or equitable.


## COUNT VI
### (Title VII, Constructive Discharge –Velazquez)

106. Plaintiffs incorporate and reallege Paragraphs 1 through 105 of Count V as Paragraphs 1 through 105 of this Count VI, as though fully set forth herein.

107. Plaintiff VELAZQUEZ has a federally protected right to work in a workplace that is free from sexual harassment, gender discrimination, and abuse.

108. The hostile work environment, discrimination and harassment, as alleged herein, made Plaintiff VELAZQUEZ' working conditions so intolerable and unbearable that she was forced to resign her position.

109. The demonstrated failure and refusal of the Defendant management to act in support of an environment free of discrimination and abuse, and indeed the palpably hostile attitude toward Plaintiff manifested by General Manager Lancero, led Plaintiff VELAZQUEZ to realize that the intolerable conditions would persist without remediation. Further, she was threatened with legal action in continuing to pursue her rights. Plaintiff was thus forced to resign her position.

110. A reasonable person subjected to Plaintiff's working conditions would

have determined that the hostile work environment, discrimination and harassment, as alleged herein, were so unbearable and intolerable that he or she would be forced to resign.

111.    The actions of Defendant in intentionally engaging in and condoning sexual harassment against Plaintiff VELAZQUEZ, as well as threatening her with legal action, has caused her great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE,** Plaintiff VELAZQUEZ respectfully requests:

    a.   All wages and benefits Plaintiff VELAZQUEZ would have received but for the discrimination, including pre-judgment interest;

    b.   Compensatory damages to the maximum amount permitted by statute to compensate Plaintiff VELAZQUEZ for the depression, humiliation, anguish, and emotional distress caused by Defendant BRINKER's conduct;

    c.   Defendant be required to pay prejudgment interest to Plaintiff VELAZQUEZ on these damages;

    d.   A permanent injunction enjoining Defendant BRINKER from engaging in the discriminatory practices complained of herein;

    e.   A permanent injunction requiring Defendant BRINKER adopt employment practices and policies in accord and conformity with the requirement of Title VII, 42 U.S.C. §2000(e), *et seq.*;

    f.   The Court retain jurisdiction of this case until such time as it is assured that Defendant have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

    g.   Punitive damages as a result of Defendant BRINKER's deliberate, intentional, willful, wanton and malicious conduct;

    h.   An award of reasonable attorneys' fees, costs, and litigation expenses; and,

    i.   Such other relief as the court may deem just or equitable.

DACIA GONZALEZ
EVA VALAZQUEZ

By:  / Robert William Maucker
       Attorney for Plaintiffs.

**PLAINTIFFS DEMAND TRIAL BY JURY.**

Robert W. Maucker
R.W. Maucker, P.C.
9231 S. Roberts Road
Hickory Hills, Illinois  60457
(708) 233-3815
ARDC No. 6246907

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2007-04143 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Dacia Gonzalez** | **(847) 571-2631** | **07-03-1982** |

| Street Address | City, State and ZIP Code |
|---|---|
| **512 Waverly, Streamwood, IL 60107** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **BRINKER INTERNATIONAL** | **500 or More** | **(847) 240-5600** |

| Street Address | City, State and ZIP Code |
|---|---|
| **Streets Of Woodfield Center,  Schaumburg, IL 60173** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

| ☐ RACE | ☐ COLOR | ☒ SEX | ☐ RELIGION | ☐ NATIONAL ORIGIN |
|---|---|---|---|---|
| ☒ RETALIATION | ☐ AGE | ☐ DISABILITY | ☐ OTHER *(Specify below.)* | |

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **05-01-2006**     Latest **04-02-2007**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with Respondent in May 2006. My most recent position is Pantry Worker. Since the beginning of my employment, I have been subjected to sexual harassment by my co-workers. I complained to Respondent, most recently in January 2007, and I was reassigned to another department.

I believe that I have been discriminated against because of my sex, female, and have been retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

APR 0 2 2007

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Apr 02, 2007**     *Dacia Gonzalez*<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

GROUP EXHIBIT "A"

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2007-04141 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Eva Velazquez** | **(630) 855-3291** | **05-25-1979** |

| Street Address | City, State and ZIP Code |
|---|---|
| **120 Willow Rd., Streamwood, IL 60107** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **BRINKER INTERNATIONAL** | **500 or More** | **(847) 240-5600** |

| Street Address | City, State and ZIP Code |
|---|---|
| **Streets Of Woodfield Center,  Schaumburg, IL 60173** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **03-01-2006**    Latest **04-02-2007**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with Respondent in March 2006. My most recent position is Pantry Worker. Since the beginning of my employment, I have been subjected to sexual harassment by my male co-workers. I complained to Respondent, most recently in January 2007, to no avail.

I believe that I have been discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

APR 02 2007

CHICAGO DISTRICT OFC

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Apr 02, 2007**          *Eva Velazquez*<br>Date               Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

GROUP EXHIBIT "A"

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Dacia Gonzalez**<br>**512 Waverly**<br>**Streamwood, IL 60107**<br><br>**CERTIFIED MAIL  7099 3400 0018 8815 7145** | From: **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2800**<br>**Chicago, IL 60661** |

☐  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2007-04143** | **Rachel Lowell,**<br>**Investigator** | **(312) 353-2401** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*                     *2/15/08*

Enclosures(s)

**John P. Rowe,**
**District Director**

*(Date Mailed)*

cc:    **BRINKER INTERNATIONAL**

GROUP EXHIBIT "B"

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Eva Velazquez**<br>**120 Willow Rd.**<br>**Streamwood, IL 60107**<br><br>**CERTIFIED MAIL  7099 3400 0018 8815 7138** | From: **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2800**<br>**Chicago, IL 60661** |

☐   *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2007-04141** | **Rachel  Lowell,**<br>**Investigator** | **(312) 353-2401** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☒   More than 180 days have passed since the filing of this charge.

☐   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒   The EEOC is terminating its processing of this charge.

☐   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*    2/15/08

Enclosures(s)

**John P. Rowe,**
**District Director**

*(Date Mailed)*

cc:   **BRINKER INTERNATIONAL**

GROUP EXHIBIT "B"